UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Sherry Russell, Individually, and on behalf
of All Others Similarly Situated,

           Plaintiff,

      - against -

Healthalliance Hospital Broadway Campus,
and Ciox Health, LLC,

          Defendants.

ECF Case 1:20-cv-01204-GLS-ATB

---

## DEFENDANTS CIOX HEALTH, LLC'S AND HEALTH ALLIANCE HOSPITAL BROADWAY CAMPUS'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff Sherry Russell brings this putative class action on behalf of certain individuals who requested copies of electronic medical records from Defendants Ciox Health, LLC ("Ciox") or Health Alliance Hospital Broadway Campus ("Health Alliance"), and who were allegedly charged fees that were unreasonable under federal law for the electronic production of those documents. But her complaint suffers from a central, incurable flaw: it rests on the theory that Defendants are constrained by federal law to charge no more than $6.50 per request (the "Federal Patient Rate"). Leaving aside that Plaintiff is incorrect about the requirements of federal law, it is well-established in this circuit and *every other circuit* to have addressed this issue that no private right of action exists to enforce the federal laws governing the fees for copies of medical records. Beyond this glaring defect, Plaintiff also fails adequately to plead that the Federal Patient Rate applies to the subject request; that she was charged an unreasonable fee; or that she ever paid it. In sum, Plaintiff has no standing to pursue this action and is also without a cause of action. And, even if she had one, she has failed plausibly to allege that she is entitled to any relief given that the request was both invalid and would not have been subject to the Federal Patient Rate had it

been valid.  Accordingly, Defendants respectfully request that the Court dismiss the Complaint and all of Plaintiff's claims in accordance with Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, alternatively, Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

### I.    FACTUAL HISTORY

Plaintiff is the wife of decedent Charles Russell ("Mr. Russell").  (Dkt. No. 1-1, Compl. ¶ 2.)  As alleged, Mr. Russell received medical care from Health Alliance, where he was allegedly diagnosed belatedly with the lung cancer resulting in his death on October 28, 2019.  (*Id.* ¶ 13.) After engaging the law firm of John H. Fisher, P.C. to pursue a potential lawsuit against Health Alliance for the delayed diagnosis, Plaintiff purported to execute a medical release form (hereafter "HIPAA Authorization") on behalf of her late husband and sought to obtain copies of electronic medical records relating to Mr. Russell's treatment at Health Alliance (the "Records").  (*Id.* ¶¶ 13– 15.)  Under federal law, when a third party—like a law firm—or anyone *other than* the patient (the "individual") or their Personal Representative[1] seeks copies of medical records relating to the

---

[1]  A Personal Representative is someone authorized under state or other applicable law to act on behalf of the patient in making health care related decisions, such as someone bearing a health care power of attorney.  *See* 45 C.F.R. § 164.502(g)(2); HHS.gov, *Personal Representatives*, https://www.hhs.gov/hipaa/for-individuals/personal-representatives/index.html ("If a person can make health care decisions for you using a health care power of attorney, the person is your personal representative.").  A request from a Personal Representative is treated as a request from the individual, *i.e.*, the patient.  45 C.F.R. § 164.502(g)(1).  However, "[w]hen an individual dies, the personal representative for the deceased is the executor or administrator of the deceased individual's estate"; the status of Personal Representative is not automatically bestowed on the person who had the individual's healthcare power of attorney when the individual was alive.  HHS.gov, *Personal Representatives*, https://www.hhs.gov/hipaa/for-individuals/personal-representatives/index.html; 45 C.F.R. § 164.502(g)(4).  Moreover, an entity—such as a law firm wielding a HIPAA authorization—that is merely afforded the right to *access* medical records reflecting a patient's care, but who may not make any decisions about the patient's substantive care, is accordingly not a Personal Representative under federal law.

patient, the request must include a properly executed HIPAA Authorization from the individual or their Personal Representative delineating the scope of the requestor's authority to obtain the requested copies.   *See, e.g.*, 45 C.F.R. §§ 164.502(a)(1)(iv), 164.508; HHS.gov, *FAQ*, https://www.hhs.gov/hipaa/for-professionals/faq/264/what-is-the-difference-between-consent-and-authorization/index.html ("An authorization is a detailed document that gives covered entities permission . . . to disclose protected health information to a third party specified by the individual.").

Ciox is a health technology company that, among other things, provides release-of-information services ("ROI services") for healthcare providers by processing and fulfilling requests that those providers receive to furnish private health information relating to their patients, including medical records reflecting that information.  At all relevant times, Ciox contracted with Health Alliance to provide certain ROI services for Health Alliance.  (*See* Compl. ¶ 10.)  Plaintiff alleges that between April and September 2020 she made multiple attempts to obtain copies of the Records relating to Mr. Russell from Defendants, and that Defendants "failed and refused to provide" copies of the Records to Plaintiff.  (*Id.* ¶¶ 18–19.)  Although Plaintiff alleges that ***she*** "ordered" copies of the Records in "April, 2020" and that ***she*** made a number of attempts to obtain such copies (*id.* ¶¶ 14, 18), based on the face of the request, it is clear that the request was actually made by a ***third party***, not by Plaintiff (Ex. 1).[2]  *See, e.g.*, *Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) ("When documents attached to the complaint as exhibits or

---

2  References to "Ex. 1" are to the exhibit accompanying the declaration of Jason Martin. Because Plaintiff specifically alleges that a record request was sent to Health Alliance in April 2020, this document is incorporated by reference into the Complaint and so may be considered on this motion to dismiss. *See, e.g.*, *Allen v. Berlin*, 132 F. Supp. 3d 297, 300 n.2 (N.D.N.Y. 2015); *Gilmore v. Stone*, 2003 WL 1923734, at *4 n.3 (N.D.N.Y. Apr. 23, 2003), *aff'd*, 115 F. App'x 108 (2d Cir. 2004).

incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true.").

By letter dated April 20, 2020, John H. Fisher—***not*** Plaintiff—submitted a request to Health Alliance for copies of the Records relating to Mr. Russell (the "April Request").  (Ex. 1 at 1.)  Mr. Fisher identifies himself as "represent[ing] Sherry Russell" and "enclos[es] a HIPAA-compliant medical authorization allowing [him and his firm] to obtain" copies of the Records.  (Ex. 1 at 1.)  The HIPAA Authorization submitted with the April Request identifies "Charles Russell" as the patient, is dated "April 13, 2020" (nearly 6 months after Mr. Russell's death), and is executed by "John H. Fisher as Attorney-in-Fact for Sherry Russell, as distributee of Charles Russell."  (Ex. 1 at 6.)  However, because the April Request was made ***after*** Mr. Russell's death, to establish Plaintiff's entitlement to authorize the release of the copies of the Records, Plaintiff was obligated to include letters of administration or estate, a death certificate, and/or a distributee statement. *See* 45 C.F.R. § 164.502(g)(4).  Importantly, Plaintiff does not allege that any such document was included with the April Request, and the April Request in fact lacks any such document.  (Ex. 1.)

In her Complaint, Plaintiff does not clearly allege that Ciox or Health Alliance ever charged her (or Mr. Fisher) for the copies of the Records or that she (or Mr. Fisher) paid for such copies. (*See* Compl.)  Indeed, such an allegation would be inconsistent with Plaintiff's assertion that Defendants "failed and refused" to provide copies of the Records in the first instance (Compl. ¶ 19.)  Nevertheless, Plaintiff alleges that Defendants overcharged her for copies of the Records by "insist[ing] upon the payment of photocopy fees applicable to physical copies of medical records" despite the fact that the April Request sought only electronic records.  (*Id.* ¶¶ 28–29; *id.* ¶ 53 ("Defendants illegally charged $.75 cent per page fee for electronic copies of medical records,

which are distinct from paper copies and photocopies."); *id.* ¶ 49 ("The plaintiffs were harmed by having to pay the defendant's improper charges for simply obtaining electronic medical records.").

Plaintiff alleges that by charging per-page fees that exceed the Federal Patient Rate, Defendants violated various provisions of federal law.[3]   Specifically, Plaintiff claims that Defendants' alleged charge of 75 cents per page of electronic records violated the "customary fee of $6.50" that Plaintiff says HITECH, Pub L. No. 111–5, 123 Stat. 226; HIPAA, Pub. L. No. 104–191, 110 Stat. 1936; and the Privacy Rule, 45 C.F.R. § 164.524(c)(4), establish for "*direct requests*" for electronic medical records "*made by a patient*" (*i.e.* the Federal Patient Rate). (Compl. ¶¶ 24, 52–54 (emphasis added).)  Plaintiff notably does not bring claims for violations of New York's own regulations governing medical record fees, presumably because those regulations permit hospitals to charge *precisely* the 75 cent per-page charge that Plaintiff complains about— irrespective of whether the records are in hard copy or digital format.[4]  *See* N.Y. Pub. Health Law § 18(2)(e).[5]

Plaintiff seeks to represent an apparently nationwide class, purportedly encompassing:

> All adult patients or guardians of adult patients (or of the adult patient's estate), parents or guardians of minor patients, or personal representatives or distributees

---

3   Plaintiff does not assert any claims based on Ciox and HealthAlliance's alleged refusal to provide copies of the Records in response to the request for them, although Plaintiff asserts that this delay, too, violates federal and state law.  (Compl. ¶¶ 16–17.)

4   As held in *Ruzhinskaya v. HealthPort Techs. LLC*, 2020 WL 3791881, at *4 (S.D.N.Y. July 7, 2020), the "reasonable charge" required by N.Y. Pub. Health Law § 18 is not even applicable to non-hospitals, such as Ciox.

5   Two courts in this Circuit have also held that no private right of action exists to enforce New York's medical records fee limitations. *Ruzhinskaya*, 2020 WL 3791881, at *4; *Ortiz v. CIOX Health LLC*, 386 F. Supp. 3d 308, 317 (S.D.N.Y. 2019).  That question is currently pending before the New York Court of Appeals, on certification from the United States Court of Appeals for the Second Circuit.  *See Ortiz v. Ciox Health LLC*, 35 N.Y.3d 1001, 1001(2020). The appeal has been fully briefed, and argument is set for March 24, 2021.

of deceased patients, who: (a) requested medical records from the Kingston Hospital and/or Ciox Health, LLC; (b) by themselves, or through an attorney or any other individual or entity with the appropriate authorization; and (c) were charged by Kingston Hospital and/or Ciox Health, LLC, an unreasonable fee in excess of federal and/or New York State law for electronic copies of medical records, which are distinct from paper copies and photocopies.

(Compl. ¶ 34.)

Plaintiff alleges that the members of putative class have suffered "economic harm" as a result of Defendants' charges (*id.* ¶¶ 48, 54), and seeks monetary, compensatory, statutory, and putative damages—including an alleged statutory entitlement to damages of $50,000 per violation—as well as injunctive relief (*id.* at p. 10).

## II.     PROCEDURAL HISTORY

On September 4, 2020, Plaintiff filed a Summons and Complaint in the New York State Supreme Court for the County of Ulster, captioned *Sherry Russell, et al. v. Healthalliance Hospital Broadway Campus, and Ciox Health, LLC*, No. EF2020-2203.  (*See* Compl.)  Plaintiff caused Ciox to be served on September 10, 2020, and caused Health Alliance to be served on September 11, 2020.  Ciox filed a notice of removal on September 30, 2020, to which Health Alliance consented and joined.  (Dkt. Nos. 1, 9.)  On October 7, 2020, the Court entered an Order extending Ciox's deadline to respond to the Complaint to October 21, 2020.  (Dkt. No. 8.)  In Orders dated October 13 and 14, 2020, and pursuant to a stipulation between the parties, the Court further extended Ciox's and Health Alliance's deadline to respond to the Complaint to November 13, 2020. (Dkt. Nos. 13, 14.)  Finally, on November 5, 2020, the Court entered another Order, pursuant to a second stipulation between the parties, setting a deadline of December 17, 2020 for Plaintiff to file an amended Complaint or stand upon her Complaint as originally filed, and extending Defendants' deadline to respond to the Complaint to January 19, 2021.  (Dkt. No. 17.)  Plaintiff elected not to amend her Complaint by the deadline to do so, and Defendants now move to dismiss.

6

## ARGUMENT

Plaintiff's claim is infirm at every level. *First*, whatever the merits of Plaintiff's claims regarding alleged overcharges, Plaintiff fails to allege that she (or Mr. Fisher) ever in fact paid such fees in exchange for obtaining copies of the requested Records. Accordingly, Plaintiff has failed to plead any injury resulting from the alleged overcharge, and thus lacks standing under Article III of the United States Constitution to raise such claims. *Second*, in seeking to enforce her erroneous application of the requirements of HIPAA and/or HITECH, Plaintiff alleges claims that lack private rights of action, and that cannot form the basis of her claims. *Finally*, even if she had standing and had alleged a viable cause of action, Plaintiff fails to state a claim because the Complaint makes clear on its face that the April Request is invalid and *not* an "individual request" that under applicable federal regulations would qualify for the Federal Patient Rate. For any and all of these reasons, this Court should dismiss Plaintiff's Complaint.

## I.   PLAINTIFF FAILS TO ALLEGE THAT SHE WAS INJURED BY THE ALLEGEDLY INFLATED CHARGE, SO SHE LACKS STANDING.

While Plaintiff's Complaint is far from a model of clarity, she alleges repeatedly that she is entitled to relief because she was overcharged for copies of the Records. (Compl. ¶¶ 36, 37, 45, 48, 52.) However, despite numerous allegations of overcharging, Plaintiff *never* alleges that she (or anyone) actually paid for copies of the Records. Because Plaintiff never pleads facts supporting her claim that she was injured by Defendants' conduct, she lacks standing, and her Complaint should be dismissed for lack of subject matter jurisdiction.

The closest Plaintiff comes to alleging that payment was made is in the First Cause of Action—not the body of the Complaint—where she alleges that "[t]he plaintiffs"—*i.e.*, the putative class—"were harmed by having to pay the defendant's improper charges." (Compl. ¶ 49.) But this allegation fails plausibly to allege that Plaintiff *herself actually* made a payment.

7

Moreover, the Complaint's reference to payments made by the putative class, while omitting any such claim with regard to Plaintiff herself, only serves to reiterate that Plaintiff *does not* allege that she paid any alleged overcharge.  This makes sense, as Plaintiff's allegations are inconsistent with the notion that she paid anything: she complains about being charged too much for copies of the Records, but her Complaint indicates that she never received those copies, supporting the conclusion that she never paid for them.  (*Id.* ¶¶ 19, 28.)  Likewise, the Complaint indicates that it was *Plaintiff's attorney* who requested—and therefore would have been charged for—copies of the Records, not Plaintiff herself.  Surely, had Plaintiff or her attorney paid for such copies and still not received them, that would have been something that was mentioned in the Complaint.

To establish Article III standing—and thus that the Court has jurisdiction to hear this case—a "plaintiff must have suffered an 'injury in fact,'" which is concrete and particularized, and actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Marakova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear [his or her] claim[s]." *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)).  "Although '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, . . . jurisdiction must be shown affirmatively, *and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.*'"  *Id.* (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).  Accordingly, to plead standing and avoid dismissal under Rule 12(b)(1), a plaintiff must allege facts supporting their claim that they, in fact, suffered a concrete injury as a result of the defendant's conduct.  Plaintiff here plainly has not carried her

burden to plead injury in fact, as she fails entirely to plead that she paid, and therefore was in fact injured by, Defendants' alleged overcharges. *See, e.g.*, *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 268 (S.D.N.Y. 2014)  (holding that plaintiffs lacked standing to sue for medical record overcharges where they failed to plead that they paid the overcharges); *McCracken v. Verisma Sys., Inc.*, 2015 WL 2374544, at *4–5 (W.D.N.Y. May 18, 2015) (same).[6]  Plaintiff lacks standing to pursue her claims, and the Court should dismiss the Complaint for lack of subject matter jurisdiction.

## II.   THERE IS NO PRIVATE RIGHT OF ACTION UNDER HIPAA OR HITECH.

Even had Plaintiff actually paid the fees she alleges violate federal law—specifically, HIPAA and HITECH (Compl. ¶¶ 48, 52, 54)—it is beyond dispute that Plaintiff has no private right of action under either statute.  Because no causes of action exist under which Plaintiff may bring her claim, her Complaint must be dismissed for failure to state a claim.  *See Fair v. Verizon Commc'ns Inc.*, 621 F. App'x 52, 53 (2d Cir. 2015) (collection cases).

Plaintiff's two causes of action seek relief based on Defendants' alleged "violation of federal law by overcharging plaintiff for the plaintiff's decedent's electronic medical records," for "violat[ing] the HITECH Act of 2019 when they overcharged the plaintiff," and for "defendants'

---

6   To the extent Plaintiff's claim is that she was injured by the fact of the alleged overcharge—irrespective of whether she paid it or was otherwise injured by it—such a claim reflects the kind of "bare procedural violation" that the Supreme Court has explained does not suffice to confer Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").  Absent an allegation that she actually made any payments as a result of Defendants' conduct, her claim fails.  *See Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (affirming dismissal where plaintiff did not allege that she ever paid any charge and thus failed to allege an injury-in-fact); *Pena v. British Airways, PLC (UK)*, 2020 WL 3989055, at *2 (E.D.N.Y. Mar. 30, 2020) (plaintiff failed to allege injury-in-fact where plaintiff did not allege that "he actually incurred any expense").

violation of HIPAA." (*Id.* ¶¶ 48, 52, 54.)  However, as the United States Court of Appeals for the Second Circuit unequivocally held, "HIPAA confers no private cause of action, express or implied." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020); *see also, e.g.*, *Stevens v. Trendle*, 2019 WL 6498174, at *2 (E.D.N.Y. Dec. 3, 2019) (collecting cases); *Phillips v. Dawes*, 2016 WL 11478218, at *6 (N.D.N.Y. July 14, 2016), R. & R. *adopted*, 2016 WL 5864784 (N.D.N.Y. Oct. 7, 2016); *Jackson v. Ramirez*, 2016 WL 796854, at *10 (S.D.N.Y. Feb. 22, 2016), *aff'd*, 691 F. App'x 45 (2d Cir. 2017);  *Rodgers v. Rensselaer Cnty. Sheriff's Dep't*, 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) (collecting cases); *Massie v. Metro. Museum of Art*, 2012 WL 4948191, at *2 (S.D.N.Y. Oct. 16, 2012); *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases).  And for the same reason that HIPAA lacks a private right of action, federal courts have repeatedly held that there is no private cause of action under the HITECH Act, either.  *See, e.g.*, *Wood, Atter & Wolf, P.A. v. Solantic Corp.*, 2019 WL 3229338, at *1–2 (M.D. Fla. July 18, 2019) (collecting cases); *Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767, 778–79 (W.D. Tenn. 2018), *aff'd*, 944 F.3d 593 (6th Cir. 2019); *Sullivan v. Clallam Cnty. Pub. Health Dist. No. 2*, 2016 WL 3059409, at *2 (W.D. Wash. May 31, 2016).

Because Plaintiff's causes of action purport to arise solely under HIPAA and HITECH, the Court should dismiss this case for failure to state a claim.[7]

---

7    To the extent Plaintiff is attempting to raise a New York common-law negligence per se claim based on federal law, such a claim, too, fails under settled New York law.  A plaintiff cannot rely on a common-law cause of action to bring a claim that would not exist but for a statute that does not include a private right of action.  *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 353 (2011).  Because the Federal Patient Rate is a creature of federal laws that do not provide for private rights of action, the alleged violation of that fee limit cannot serve as the basis of a common-law negligence claim.

III.    **THE APRIL REQUEST WAS INVALID AND NOT SUBJECT TO THE FEDERAL PATIENT RATE.**

Even if Plaintiff had alleged a cognizable injury and had a viable cause of action under HIPAA or HITECH, her Complaint must still be dismissed for two reasons.  *First*, Plaintiff's allegations make clear that the April Request for copies of the Records was invalid on its face because it did not include the necessary documentation to support Plaintiff's entitlement to authorize the release of the copies of the Records reflecting the treatment of her decedent husband. *Second*, even if Plaintiff were entitled to authorize the release of the copies of the Records, there can be no dispute that Mr. Fisher—Plaintiff's lawyer—made the request for such copies *and* that Mr. Fisher's request directed that the Records be sent to him, not Plaintiff.   The April Request thus does not qualify for the Federal Patient Rate.  As explained below, both of these conclusions support dismissing this case.

First, *the April Request was invalid.*  Mr. Russell passed away nearly six months prior the date of the April Request.  Despite this, Plaintiff fails to allege that Plaintiff was Mr. Russell's Personal Representative or that the documentation submitted with the April Request authorized the release of the copies of the Records, such that she was even permitted to authorize a release of copies of the Records on Mr. Russell's behalf.  Plaintiff alleges that the April Request was supported with "a properly executed release authorization, power of attorney and certified death certificate."  (Compl. ¶ 15.)  Irrespective of whether a power of attorney may have sufficed to render Plaintiff the Personal Representative of Mr. Russell during his life, it is expressly *not* sufficient after his passing.  Upon Mr. Russell's death, in order for Plaintiff to qualify as his personal representative, she would have had to proffer evidence that she was the decedent's "executor,  administrator,  or  [a] person [who]  has  authority  to act on  behalf  of  [the] deceased individual or of the individual's estate."  45 C.F.R. § 164.502(g)(4); HHS.gov, *Personal*

*Representatives*, https://www.hhs.gov/hipaa/for-individuals/personal-representatives/index.html. Plaintiff pleads neither that she in fact held any of those roles, nor that the April Request included any evidence supporting the notion that she held any such role.  Accordingly, Plaintiff's effort to authorize the release of the copies of the Records concerning Mr. Russell was invalid.  *See* 45 C.F.R. § 164.514(h) (requiring verification of a Personal Representative's authority "to have access to protected health information" and to "[o]btain any documentation, statements, or representations" from that person establishing that status).  Self-evidently, an invalid request for copies of medical records is not subject to any fee structure, let alone the Federal Patient Rate, as health care providers are legally prohibited from disclosing copies of medical records absent a valid request.[8]  *See* 45 C.F.R. § 164.502(a); *see also, e.g.*, *Phelan v. Sullivan*, 2010 WL 2948217, at *6 (N.D.N.Y. July 7, 2010) (Baxter, M.J.), *R. & R. adopted,* 2010 WL 2948188 (N.D.N.Y. July 22, 2010) ("HIPAA was enacted to protect against unwarranted disclosure of health records and information.").

Second, *the April Request was not an individual request subject to the Federal Patient Rate*.  Because Plaintiff fails adequately to plead that she was Mr. Russell's Personal Representative or that she provided the necessary documentation to authorize the release of Mr. Russell's protected health information, the April Request—invalid as it was—by definition could not be an individual request subject to the Federal Patient Rate, because only a Personal Representative is "treat[ed] . . . as the individual."  45 C.F.R. § 164.502(g)(1).  But even if Plaintiff

---

[8]   The invalidity of the April Request also explains Plaintiff's allegation that "[t]o date, the Healthalliance Hospital Broadway Campus and Ciox Health, LLC have failed and refused to provide the plaintiff's decedent's medical records to the plaintiff."  (Compl. ¶ 19.)  Defendants could not have done otherwise, because the April Request did not contain the proper authorization allowing Defendants to release Mr. Russell's protected health information.

adequately pleaded such facts, her claims still fail because, notwithstanding Plaintiff's conclusory assertion that the "plaintiff ordered" copies of the Records (*see* Compl. ¶¶ 14–15), it is clear that the April Request was not made by Plaintiff herself.  *Cf.*, *Spiro*, 73 F. Supp. 3d at 269 n.6 (refusing to credit "conclusory" allegation that plaintiff paid for requests where complaint made clear that plaintiff's attorney was the payor); *McCracken*, 2015 WL 2374544, at *4 (same).  Rather, the April Request was made by Mr. Fisher, Plaintiff's attorney, and enclosed a HIPAA Authorization form that Plaintiff signed on Mr. Russell's behalf in an attempt to authorize the release of the requested copies of the Records to Mr. Fisher.  (*See* Compl. ¶ 15 (alleging that "Plaintiff's request . . . included a properly executed release authorization").)  As noted above, that HIPAA Authorization was invalid because Plaintiff failed to furnish the documents required to establish her entitlement to release copies on Mr. Russell's behalf.  But the inclusion of the purported HIPAA Authorization in the request is itself fatal to Plaintiff's claim:  if the April Request were truly a request by the individual (or, in this instance, by a purported Personal Representative), no HIPAA Authorization would have been required.  *See* 45 C.F.R. § 164.502(a)(1)(i).

Under well-established federal law, requests for copies of medical records submitted by third parties enclosing a HIPAA Authorization, or requests directing that copies of the requested records be sent to a third party, are *not* subject to the Federal Patient Rate.  *See, e.g.*, *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 66–67 (D.D.C. 2020) (vacating HHS guidance that extended the Patient Rate to requests made by third parties); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 591 n.5 (E.D.N.C. 2020); *Cross v. Formativ Health Mgmt., Inc.*, 439 F. Supp. 3d 616, 631 n.3 (E.D.N.C. 2020); *see also* HHS.gov, *Important Notice Regarding Individuals' Right of Access to Health Records*, https://www.hhs.gov/hipaa/court-order-right-of-access/index.html ("[T]he fee limitation set forth at 45 C.F.R. § 164.524(c)(4) will apply only to an individual's

request for access to their own records, and does not apply to an individual's request to transmit records to a third party.").  Indeed, Plaintiff acknowledges that only "[w]hen direct requests *are made by a patient*, [do] they have the right to insist upon the production of electronic medical records for the customary fee of $6.50."  (Compl. ¶ 24 (emphasis added).)

The records incorporated by reference into the Complaint confirm this conclusion.  Although Plaintiff alleges that she "contacted" Health Alliance and Ciox various times from April to September 2020 "to obtain" copies of the Records reflecting her late husband's care (*id.* ¶ 18), she pleads only a single actual "request" in which she "ordered" those records—the April Request made by Mr. Fisher to Health Alliance.  (*Id.* ¶¶ 14–15.)  The Request was made by Plaintiff's attorney, Mr. Fisher, on Mr. Fisher's firm letterhead, expressly relies on "a HIPAA-compliant medical authorization allowing us to obtain the medical records of this patient," and demands that the records be sent *to the law firm*, not to Plaintiff.  (*See* Ex. 1 at 1.)[9]  Such a request by a third party, incident to a HIPAA authorization, and which directs the copies of the records to be sent to the third party, is *not* subject to the Federal Patient Rate (*i.e.*, the $6.50 cap).  *See Azar*, 435 F. Supp. 3d at 66–67.  Accordingly, Defendants could not have overcharged Plaintiff under federal law as the April Request was made by her attorney, not Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

---

[9]  Notably absent from this request is any documentation supporting the conclusion that Plaintiff was Mr. Russell's executor or administrator, or that she had the authority to act on behalf of his estate.  (*See* Ex. 1.)

Dated:  January 19, 2021                            Respectfully submitted,

                                        */s Jay P. Lefkowitz*
                                        _____
                                        Jay P. Lefkowitz, P.C.
                                        Gilad Bendheim
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900
                                        lefkowitz@kirkland.com
                                        gilad.bendheim@kirkland.com

                                        *Attorneys for Defendant Ciox Health, LLC*

                                        */s Daniel Gagliardi*
                                        _____
                                        Daniel Gagliardi
                                        LYNCH DASKAL EMERY LLP
                                        137 West 25th Street, 5th Floor
                                        New York, New York 10001
                                        Telephone: (212) 302-2400
                                        Fax: (212) 302-2210
                                        gagliardi@lde.law

                                        *Attorneys for Defendant Health Alliance
                                        Hospital Broadway Campus*